## THE ALICE M. DREW.

## THE WILLIAM H. GALLISON.

(District Court, E. D. New York. December 19, 1923.)

**1. Collision ⊜95(2).**

Tug *held* responsible for collision in failing to follow course in accordance with her signals previously given.

**2. Collision ⊜95(2).**

That deck hand, an unlicensed steersman, was at tug's wheel at time of collision, *held* insufficient alone to condemn it.

In Admiralty. Separate libels by the Reliable Towing & Transportation Company, Inc., as owner of the steam tug William H. Gallison, against the steam tug Alice M. Drew, her engines, etc., and by the Red Hook Towing Company, Inc., against the steam tug William H. Gallison, tried together. Libel of the Reliable Towing & Transportation Company, Inc., dismissed, and decree for libelant Red Hook Towing Company, Inc.

Decree affirmed 11 F.(2d) 377.

Walter B. Hall, of New York City, for Reliable Towing & Transportation Co.

Foley & Martin, of New York City, for Red Hook Towing Co.

INCH, District Judge. This is a case of a collision between the tug Gallison, owned by the Reliable Towing & Transportation Company, Inc., and the tug Drew, owned by the Red Hook Towing Company, Inc. Cross-libels were filed, and by stipulation both cases were tried together.

The facts, briefly, are that about 7 o'clock in the morning of March 7, 1923, the steam tug Alice M. Drew left Thirty-Third street, Brooklyn, bound for Erie Basin. The course intended to be followed was out Gowanus Bay, and up Red Hook Channel. The tide was beginning to flood, and, while it had been snowing during the night, the weather had cleared; it was daylight, and there was no difficulty in seeing. As the Drew reached Red Hook Channel, the steam tug Gallison was seen some distance away, headed down the channel towards the Drew. Neither tug had a tow.

It is conceded that a custom exists by which a tug coming down Red Hook Channel, such as the Gallison was, and desiring to pass into Gowanus Bay, blows two whistles, signifying that she is going to port. This custom was known to both operators of the tugs. It is also undisputed that the Gallison intended to go into Gowanus Bay, and that, shortly after she sighted the Drew, she blew the two whistles, and the deck hand of the Drew, who was temporarily steering her in the absence of the captain, who was in the galley eating breakfast, answered with two whistles. The whole trouble arose after this exchange of signals, for shortly after the two tugs collided. I find from the evidence that the nose of the Gallison hit the Drew on her starboard side, about 15 feet from the bow.

What caused this collision is differently explained by the parties. The witnesses for the Gallison claim that, in spite of the course indicated by the signals, the Drew kept coming on, bearing to her starboard, instead of to her port, or straight ahead, and that when they were about 500 feet apart the Drew blew one whistle, indicating she was going to her starboard, and that thereupon the Gallison blew a danger signal, and the collision occurred. The witnesses for the Drew say this is not so, but that, on the contrary, after the Gallison had blown the two whistles and received those from the Drew, she, instead of

going towards her port, continued to come straight on, and that the Drew blew no whistles, except the answering two above mentioned, and the accident was caused solely by the negligence of the captain of the Gallison in steering contrary to his signal.

[1] I have carefully considered all the testimony, and I believe that the Gallison is solely responsible for the accident. From Exhibit 4, a chart in evidence, it is apparent that the collision occurred by the Gallison running bow on into the Drew as the latter was passing the lower point of Erie Basin. The Gallison had ample water on her port side, and, if she had followed the signals admittedly given by her, no collision would have occurred. Instead of this, she maintained a straight course, absolutely misleading the Drew, and I do not believe that the Drew ever blew a whistle after the exchange of signals aforesaid; also the position of the tugs at the exact time of the collision indicates that this is the proper solution of the question.

[2] The fact that a deck hand was at the wheel of the Drew is sufficient to cause a very careful scrutiny of his testimony and that of the other witnesses on the Drew, and if there were other facts tending to indicate fault on the part of the Drew the employment of such a man at the wheel would be sufficient to cast a doubt upon the whole case of the Drew. Where, however, there is no evidence to indicate that the lack of qualifications itself contributed to the accident, but simply existed as an independent fact, indicating simply a violation of statutory requirement, then, as was said in The Wrestler, 144 F. 334, 75 C. C. A. 296, this alone should not be enough to condemn the vessel which he was steering.

One of the faults attributed to this unlicensed steersman was that he blew a confusing whistle. I do not believe that he did so. It is undisputed that he properly answered the signal of the Gallison.

The other fault claimed is that he steered incorrectly; but, in view of all the facts, which must include the position of the boats before and at the time of the collision, the plain failure of the Gallison to take advantage of the open water on her port side, in view of her signal, and the indication by the captain of the Gallison on the chart in evidence as to where and how the accident occurred, and other similar facts, this claim of improper steering is found to really rest on the assumption that this deck hand must have steered incorrectly simply because he was a deck hand.

It appears from the evidence that this man had steered on other occasions, and that he was a seaman of nine or ten years' experience in New York Harbor. While, of course, the employment of unlicensed men at the wheel is to be condemned, such employment is in itself insufficient to prove that the tug was steered improperly.

Accordingly I direct that the libel against the Drew be dismissed, and a decree be entered against the Gallison.